IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| RISA PITTMAN | § | PLAINTIFF |
| | § | |
| v. | § | Civil Action No. 1:12CV64HSO-RHW |
| | § | |
| BOYD BILOXI, LLC | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is a Motion [50] for Summary Judgment filed by Boyd Biloxi, LLC on February 20, 2013, pursuant to Federal Rule of Civil Procedure 56. Risa Pittman has filed a Response [53] in Opposition to the Motion, and Boyd Biloxi a Reply [56]. After consideration of the parties' submissions, the record, and relevant legal authorities, and for the reasons discussed below, the Court finds that the Motion for Summary Judgment [50] should be granted.

I. FACTS AND PROCEDURAL HISTORY

Boyd Biloxi LLC owns, manages, and runs the IP Casino Resort & Spa located in Biloxi, Mississippi. During 2010, Risa Pittman ["Plaintiff"] was involved in two separate incidents while she was a patron at IP Casino ["IP"]. On March 13, 2010, Plaintiff and another casino guest argued over who had the right to play on a certain slot machine. On September 26, 2010, Plaintiff was involved in another incident that culminated in Plaintiff being escorted out of the IP Chill Bar for being intoxicated, and to her hotel room at the IP resort. Marcus Odom, an IP Security Supervisor, signed and filed an eviction notice and Plaintiff was banned from

returning to the IP. Plaintiff's IP player's account was "flagged" in the Casino Player Management System so that she would no longer receive casino promotions, discounts, and special offers.

On November 5, 2010, Plaintiff sent a letter to the IP requesting that her ban be lifted and her account cleared. Debra Hutton, who was employed as IP Casino's Security Secretary, sent an email confirmation to Plaintiff's IP host, Mr. Herb Dotson, that Plaintiff's account had been "unflagged" by Mr. Rodney Lafontaine, the Tour and Travel Manager at IP. At the time, Ms. Hutton did not remove Plaintiff's name from the Security Department spreadsheet which served to inform all IP security guards which individuals were banned from the IP premises. On November 10, 2010, the IP sent Plaintiff a letter informing her that her previous ban had been lifted effective November 10, 2010. On November 17, 2010, Plaintiff contacted Herb Dotson regarding patronizing the IP and requested that the ban be lifted.

Plaintiff claims that she patronized the IP approximately 40 times between November 2010 and October 2011. As a gambler, Plaintiff was classified as an "Elite Player" and received complimentary hotel rooms, meals, parking passes, event tickets, and a social host. On October 23, 2011, Plaintiff was present at the IP and playing the slot machines along with a friend, Ms. Michelle Walker. Upon her arrival at the IP, Plaintiff received a complimentary hotel room and meal. IP Security Officer Marcus Odom, who had completed the report in connection with the September 2010 incident, subsequently observed Plaintiff playing a slot machine.

Officer Odom requested assistance from fellow IP Casino Security Officer Adam Baskind and informed him of Plaintiff's banned status. Officer Baskind approached Plaintiff and inquired whether she knew that she was banned from the casino and asked her to leave the premises. Officers Odom and Baskind both believed at that point that Plaintiff was still banned from the casino.

Plaintiff informed both security officers that she was no longer banned. A search of the IP security records by Officer Odom revealed that Plaintiff's name remained on the spreadsheet list of banned persons. IP security personnel then contacted the Biloxi Police Department and two police officers accompanied Officer Odom to the area of the casino where Plaintiff was gambling. Defendant claims that, after further discussion as to Plaintiff's status, Plaintiff was asked to leave. When Plaintiff refused, she was arrested, handcuffed, escorted out of the IP, placed into a police car, and transported to the City of Biloxi Municipal Complex where she was charged and booked for trespassing. After she was processed, Plaintiff was released. Plaintiff returned to the IP, obtained a new hotel room key, called Ms. Walker to pick her up, and then returned to her home in Mobile, Alabama. Following a trial on January 18, 2012, on the trespassing charge, Plaintiff was adjudicated not guilty.

Plaintiff filed her Complaint [1] in this Court on February 29, 2012, asserting claims for abuse of process, malicious prosecution, negligence, wantonness, false imprisonment, intentional infliction of emotional distress, and negligent misrepresentation. Compl. [1] at pp. 2-8. Plaintiff maintains that because

Defendant "did not communicate certain facts and did not have a system in place to determine that Plaintiff was lawfully on the IP premises, Plaintiff was injured when she was arrested for trespassing." *Id.*, ¶¶ 45-49. Plaintiff contends that as a result of her arrest and subsequent prosecution, she has cried, been upset, and humiliated. Dep. of Risa Pittman [53-3], at p. 60, att. as Ex. "3" to Pl.'s Resp. to Mot. for Summ. J. Plaintiff also claims that she suffers "a lot of stress" and has "worried about it." *Id.* at pp. 61-62. Defendant now moves for judgment as a matter of law, asserting that Plaintiff has failed to produce evidence to establish the requisite elements of her claims.

## II. DISCUSSION

A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of America,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views

facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co*, 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

Because this is a case of diversity jurisdiction, the Court must apply state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938); *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).

> The core of what has become known as the '*Erie* Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the

> United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law.

*Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990).

B.  Analysis

   1.  Plaintiff's Negligence, Wantonness, and Negligent Misrepresentation Claims

Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment reads in part as follows:

> I. SUMMARY JUDGMENT SHOULD NOT BE GRANTED BECAUSE RISA PITTMAN CAN PRESENT SUBSTANTIAL EVIDENCE OF EACH ELEMENT OF HER CLAIMS FOR MALICIOUS PROSECUTION, FALSE IMPRISONMENT, ABUSE OF PROCESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Pl.'s Mem. in Opposition [54] to Mot. for Summ. J., at p. 9.

Nowhere in Plaintiff's twenty six [26] pages of briefing are there any arguments pertaining to Plaintiff's negligence, wantonness, and negligent misrepresentation claims. Because Plaintiff fails to set forth specific facts in support of these theories, thereby raising a genuine, triable issue on these claims, Plaintiff is deemed to have abandoned them. *See Hargrave v. Fibreboard Corp.*, 710 F. 2d 1154, 1163 (5th Cir. 1983). "Even an issue raised in the complaint but ignored at summary judgment may be deemed waived. 'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'" *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 678 (1st Cir. 1995) (quoting *Vaughner v. Pulito,* 804 F.2d 873, 877 n.2 (5th

Cir.1986)). For this reason, summary judgment is appropriate on Plaintiff's negligence, wantonness, and negligent misrepresentation claims.

    2.    <u>Plaintiff's Malicious Prosecution Claim</u>

Plaintiff's Complaint alleges that:

> [a]fter November 2010 and until her arrest on October 23, 2011, Risa Pittman patronized the IP Casino on numerous occasions, received promotional materials, received monthly offers, and was given complimentary hotel rooms, entertainment, spas, food, and drink. However, in a malicious attempt to have Risa Pittman wrongfully convicted, the IP Casino concocted the whole story that Risa Pittman had refused to leave after being told to do so by the security guard.

Compl. [1] at pp. 3-4.

The record evidence in this case includes an email, dated November 17, 2010, from Plaintiff's host Mr. Dotson to Ms. Hutton which states that "I got a call from Risa Pittman stating that her 86'd status had been lifted, and she plans on coming this weekend. I looked in our system, and it still shows her 86'd and to alert security if she steps on property. Please advise." Email, att. as Ex. "E" to Mot. for Summ. J. In addition, the record contains a formal report prepared by Officer Odom following the incident:

> Her [Plaintiff's] last patron management account entry instructs the user to contact Security due to Pittman being evicted. However, the account memo appeared to only flag it for 24 hours before it expired. The account stayed active and went unnoticed, allowing Pittman to actively game since her eviction date. She received her formal Notice of Eviction via certified mail before she returned to property on any of the dates that show a visit. A review of the lifted eviction log yielded negative results for Pittman being allowed back on property. Biloxi Police Department was contacted and Officer Gruich responded at 0436 hours. Investigator Adam Baskind attempted to escort Pittman from the casino floor to the valet area but she declined. Gruich was escorted to her location and she was

taken into custody for trespassing (BPD Case#1 1-023354).

Incident Report dated 10/23/2011, at p. 1, att as Ex. " J" to Mot. for Summ. J.

In his deposition Security Officer Adam Baskind was questioned about the list of persons banned from the IP. He testified that the list was a document that was stored in the computer in the security dispatch office and was updated by the security secretary. Dep. of Adam Baskind [50-7], at p. 14, att. as Ex. "G" to Mot. for Summ. J. He further testified about the October 2011 incident involving Plaintiff:

> Q. So Marcus leaves. Your understanding is he was going to check the status?
> A. Yes.
> Q. What do you do at this point?
> A. I stand by, keep an eye on her.
> Q. On Ms. Pittman?
> A. On Ms. Pittman, yes.
> Q. Okay. Tell me what happens next.
> A. He calls me over the radio. And asks me to approach her and try to have her leave the casino floor.
> A. I asked her to leave the casino floor, she denied.
> Q. She just said I'm not doing it?
> A. Correct.
> Q. Did she give you any explanation as to why she wasn't doing it?
> A. I believe that she said that she was not 86'd. I asked her to leave the casino floor so we could get this taken care of.
> Q. Why did you ask her that?
> A. If someone is priorly [sic] 86'd, I mean, we do not need her on the casino floor.
> Q. You want to get her out of there?
> A. Yes.

*Id*. at pp. 18-19.

Officer Baskind testified that he informed Officer Odom by radio that Plaintiff refused to leave the casino floor, and he recalled Officer Odom returning to the scene with the Biloxi Police officers. *Id*. at p. 20. Officer Baskind further

-8-

testified that even in the absence of a ban, casino security have on multiple occasions arrested casino patrons for trespassing if they are asked to leave and refuse: "if I ever ask someone to leave the casino floor . . . we do reserve the right to eject somebody from the floor." *Id.* at p. 23.

Officer Odom was employed as Security Supervisor on October 23, 2011, and was Officer Baskind's supervisor. Officer Odom testified that he recalled seeing Plaintiff gambling that night and recognized her from the September 2010 incident. Dep. of Marcus Odom [50-6] at p. 8, att. as Ex. "F" to Mot. for Summ. J. Officer Odom prepared the eviction report in September 2010 and testified that it resulted from Plaintiff having two prior incidents involving physical altercations while she was inside the IP. *Id.* at pp. 14-15. After this eviction was filed, Plaintiff was placed on a banned list at the IP. *Id.* at p. 16. On October 23, 2011, "[s]urveillance was contacted and given the same name [Plaintiff's]. I believe surveillance had the same list we do . . . that they keep track of individuals who are suspects or 86'd. And according to all of our records, she was still on that list." *Id.* at p. 17. Odom further testified that Officer Baskind asked Plaintiff to leave the floor and she refused. *Id.* at p. 19.

> Q. Do you know, as you sit here today, whether the ban that you had previously put on Ms. Pittman had, in fact, been lifted?
> A. No, I didn't. At that time, I did not know.
> Q. Okay. Do you know that today?
> A. Today, I do know.

*Id.* at pp. 29-30.

According to Officer Odom, even though Plaintiff was questioned about

-9-

trespassing, was given time to produce the letter authorizing her presence at the IP, and was offered the option to return to her hotel room, she refused to leave the gaming floor and was thereafter arrested. *Id.* at pp. 16, 20-21, 23.

In an action for malicious prosecution, a plaintiff must prove the following elements by a preponderance of the evidence:

> (1) the institution or continuation of original judicial proceedings, either criminal or civil;
> (2) by, or at the insistence of the defendants;
> (3) the termination of such proceedings in plaintiff's favor;
> (4) malice in instituting the proceedings;
> (5) want of probable cause for the proceedings; and
> (6) the suffering of damages as a result of the action or prosecution complained of.

*Van v. Grand Casinos of Mississippi, Inc.*, 767 So. 2d 1014, 1018 (Miss. 2000); *see also Central Healthcare Servs., P.A. v. Citizens Bank of Philadelphia*, 12 So. 3d 1159, 1167 (Miss. Ct. App. 2009); *Hudson v. Palmer*, 977 So. 2d 369, 381 (Miss. Ct. App. 2007).

> In the context of a malicious prosecution claim, "[p]robable cause requires the concurrence of (1) a subjective element-an honest belief in the guilt of the person accused, and (2) an objective element-reasonable grounds for such beliefs." *Strong v. Nicholson,* 580 So. 2d 1288, 1294 (Miss.1991) (citing *Benjamin v. Hooper Elec. Supply Co.,* 568 So. 2d 1182, 1190 (Miss.1990)). Also, "[p]robable cause is determined from the facts apparent to the observer when the prosecution is initiated." *Benjamin,* 568 So. 2d at 1190. If probable cause existed for the initiation of criminal proceedings, a claim for malicious prosecution must fail. *Coleman v. Smith,* 914 So.2d 807, 812 (Miss. Ct. App.2005); *Van v. Grand Casinos of Miss., Inc.,* 767 So.2d 1014, 1020 (Miss.2002)).

*Eubanks v. Geo Grp., Inc.*, 2008 WL 2779308 * 3 (S.D. Miss. July 14, 2008).

"'In order to show malice as it pertains to a claim of malicious prosecution, the plaintiff must show that the primary purpose of prosecuting is one other than 'bringing an offender to justice.'" *Id.* at *5 (quoting *Hudson,* 977 So. 2d at 381).

-10-

Officer Odom executed an Affidavit on October 23, 2011, which stated in part that: "Risa Pittman was permanently evicted from IP Casino and Resort on 9/28/2010. As of 10/23/2011, there is no information on file that indicates her eviction has been lifted, Biloxi Police Department was contacted and she was arrested for trespassing." Affidavit Withdrawal Penalties Form [50-12] att. as Ex. "L" to Mot. for Summ. J.

Based on the undisputed material facts, it is apparent that Plaintiff's arrest and subsequent removal from the IP were the result of Defendant's actions. The record indicates that based upon Defendant's record keeping, there indeed was confusion as to whether Plaintiff had been granted permission to return to the IP casino in October 2011. Defendant's conclusions, while perhaps erroneous, were made under the assumption that Plaintiff was improperly present at the IP casino on that date. However, these actions do not rise to the level necessary to show that Defendant acted with malice. *Funderburk v. Johnson,* 935 So. 2d 1084, 1097–98 (Miss. 2006)(affirming directed verdict for insufficient evidence of malice); *Hudson,* 977 So. 2d at 381–82 (affirming summary judgment on malicious prosecution claim where undisputed evidence showed that incident report was filed without malice and solely to stop plaintiff's harassment).

Plaintiff's subjective belief that Officer Odom wanted to see her "go to jail" is insufficient to show malice. *Eubanks,* 2008 WL 2779308 at *5. The record further demonstrates that Officer Odom subjectively and honestly believed that Plaintiff was guilty of trespassing and he therefore had probable cause to seek her removal,

which led to her arrest.

### 3. Plaintiff's False Imprisonment Claim

In order for Plaintiff to succeed on her false imprisonment claim, she must establish the following two elements: (1) that she was detained; and (2) that the detention was unlawful. *Alpha Gulf Coast, Inc. v. Jackson,* 801 So. 2d 709 (Miss. 2001); *see also Hudson*, 977 So. 2d at 383. "Our supreme court has also defined false imprisonment as an arrest without legal process." *Nassar v. Concordia Rod & Gun Club,* 682 So. 2d 1035, 1039 (Miss.1996) (citing *Little v. U.S.F. & G Rod & Gun Club,* 64 So. 2d 697 (Miss. 1953)).

Plaintiff has not offered any facts or evidence in support of this claim. Plaintiff was detained subsequent to her arrest at the IP and while in the custody of the Biloxi Police Department. Defendant is entitled to summary judgment on Plaintiff's false imprisonment claim.

### 4. Plaintiff's Abuse of Process Claim

"An abuse of process claim requires the plaintiff show that defendant: (1) made an illegal use of a legal process, (2) had an ulterior motive, and (3) damage resulted from the perverted use of process." *Hudson*, 977 So. 2d at 381(citing *Ayles v. Allen,* 907 So. 2d 300 (Miss. 2005)); *see also Franklin Collection Serv., Inc. v. Stewart*, 863 So. 2d 925, 931 (Miss. 2003). The crucial element of the claim is "the intent to abuse the privileges of the legal system." *Ayles*, 907 So. 2d at 303. Abuse of process differs from a claim of malicious prosecution "in that the latter is concerned with maliciously causing process to issue, while the former is concerned

with the improper use of process after it has been issued." *Moon v. Condere Corp.*, 690 So. 2d 1191, 1997 (Miss. 1997).

In support of this claim, Plaintiff contends that Defendants caused her to be arrested absent probable cause. Officer Odom's Affidavit executed on October 23, 2011, stated that based upon the records as they existed that night, he believed that Plaintiff was banned from the IP. The Court has previously determined that probable cause existed for Plaintiff's arrest; therefore, Plaintiff's abuse of process claim cannot succeed as a matter of law. *See Croft v. Grand Casino Tunica, Inc.*, 910 So. 2d 66, 76 (Miss. Ct. App. 2005)(affirming summary judgment for abuse of process claim where probable cause existed); *Oliver v. Skinner*, 2013 WL 667664, at *6 (S.D. Miss. 2013) (dismissing abuse of process claim and recognizing that plaintiff's "subjective belief that [the defendant] had an ulterior motive does not make it so"). Summary judgment is appropriate on this claim.

      5.    <u>Plaintiff's Intentional Infliction of Emotional Distress Claim</u>

Mississippi courts recognize intentional infliction of emotional distress claims when "the defendant's conduct . . . evokes outrage or revulsion." *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981). Where a defendant's conduct evokes outrage or revulsion, a plaintiff can recover for intentional infliction of emotional distress notwithstanding the absence of physical injury. *Jones v. Fluor Daniel Servs. Corp.*, 959 So. 2d 1044, 1048 (Miss. 2007). The Fifth Circuit has interpreted Mississippi law to mean:

> [i]t has not been enough that the defendant has acted with an intent

> which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 46, Comment (d)).

This Court has previously noted that a party opposing summary judgment cannot rely on unsupported allegations or denials in her pleadings but must submit affidavits or other evidence that demonstrate the existence of a genuine issue of material fact. *See infra. Anderson*, 477 U.S. at 256-57. Plaintiff has not proffered sufficient evidence under Mississippi law of the emotional distress she claims to have suffered, rather she has simply alleged or mentioned stress, depression, and damage to her ego.

In addition, assuming that Plaintiff's allegations against Defendant are true, the record supports the conclusion that Defendant's conduct did not rise to the level required to support a claim for emotional distress in the absence of physical injury. Based upon the existence of probable cause and the circumstances surrounding Plaintiff's arrest, Defendant's conduct was not so extreme or outrageous and did not tend to evoke outrage or revulsion that would be likely to cause severe emotional distress. The Court concludes that no reasonable trier of fact could find that Defendant's conduct rose to such a level. As such, Defendant is entitled to summary judgment on this claim.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that Defendant is entitled to judgment as a matter of law.  The Motion [50] for Summary Judgment filed by Defendant Boyd Gaming should be granted.  Accordingly,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated herein, the Motion [50] for Summary Judgment, filed by Boyd Biloxi, LLC, on February 20, 2013, pursuant to FED. R. CIV. P. 56, is **GRANTED.**

**SO ORDERED AND ADJUDGED**, this the 28th day of June, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE